UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Ryan Reissmann,<br><br>    Plaintiff,<br><br>v.<br><br>Equifax Information Services, LLC,<br><br><br>    Defendant(s). | Case No.: 3:25-cv-989<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. FCRA, 15 U.S.C. § 1681 *et seq.* |

Plaintiff Ryan Reissmann ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant. Plaintiff contends that the Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

1

3. Venue in Western District of Wisconsin is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides here, Defendant regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4. Plaintiff is a natural person who resides in the city of Oconomowoc, County of Jefferson, Wisconsin.

5. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Equifax is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district. Equifax is a Georgia corporation registered to do business in the State of Wisconsin and may be served with process upon the Corporation Service Company, its registered agent for service of process at 33 East Main Street, Suite 610, Madison, WI 53703.

7. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Wisconsin on a routine and systematic basis.

8. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

9. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

10. Any violations by Defendant was not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

*The Role of Credit Reporting Agencies*

11. Plaintiff hereby incorporates by reference paragraphs numbered 1 through 10 of this Complaint as though fully set forth at length herein.

12. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

13. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

14. Defendant is one of the three major consumer reporting agencies (at times referred to collectively as "the Equifax," and individually as a "CRA") in the United States, who regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

15. The FCRA is intended to ensure Equifax exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because Equifax have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains

to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17. Defendant obtain consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

18. Defendant also obtain information from other Equifax, who commonly share information.

19. Defendant regularly seek out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Defendant sell to third parties for a profit.

20. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

21. Defendant's unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

22. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in its own files.

23. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from Equifax to make lending decisions.

24. The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

25. FICO Scores are calculated using information contained in Defendant's consumer reports.

26. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

27. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

28. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

29. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that

a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

30. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendant in consumer reports.

31. DTI compares the total amount a consumer owes to the total amount a consumer earns.

32. Defendant regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Equifax.

33. A consumer's income, however, is not included in their consumer report; only the amount of debt is included.

34. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

35. Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in bankruptcy.

36. Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts are discharged.

37. However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

38. Rather than follow reasonable procedures to assure maximum possible accuracy, as is required by the FCRA, Defendant frequently report information regarding pre-bankruptcy debts and post-bankruptcy debts based on incomplete or knowingly inaccurate information.

39. Defendant regularly publish consumer information that conflicts with the information provided by data furnishers, included in Defendant' credit files, contained in public records that Defendant regularly access, and/or sourced through Defendant' independent and voluntary efforts.

40. Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

41. Consumers have filed thousands of lawsuits, FTC, and Consumer Financial Protection Bureau complaints against Equifax for its inaccurate consumer reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged.

42. Therefore, Defendant are on continued notice of their inadequate bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Target/TD Bank Account and Chapter 7 Bankruptcy*

43. On or around October 6, 2017, Plaintiff opened a TD Bank/ Target Card hereinafter may be referred to as "TD Bank Account" or "Account."

44. On or around April 11, 2025, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court in the Western District of Wisconsin, petition no. 3:25-bk-10836.

45. Plaintiff included the TD Bank Account in his Chapter 7 Bankruptcy Petition.

46. Plaintiff received an Order of Discharge for his bankruptcy on July 16, 2025.

47. Because the debt resulting from his TD Bank Account was included in Plaintiff's Chapter 7 Bankruptcy filings, it was discharged when the Order of Discharge was entered.

*Defendant Equifax Misreporting of Plaintiff's Account(s)*

48. On or around October 9, 2025, Plaintiff reviewed his credit reports.

49. On his Equifax credit report, the TD Bank Account is reporting with an open balance in the amount of $448, and failed to state that the TD Bank account was included and discharged in bankruptcy.

50. Defendant misrepresented the TD Bank Account by reporting it with an open balance when it was actually discharged in Plaintiff's Chapter 7 Bankruptcy.

51. This credit report was created after Plaintiff filed his Chapter 7 Bankruptcy and after Plaintiff received an Order of Discharge.

52. The name, social security number, and address in Plaintiff's Chapter 7 match the information listed on the consumer reports prepared by Defendant.

53. In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but Defendant failed to review those sources or knowingly rejected them.

54. Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from her Chapter 7 Bankruptcy.

55. However, Defendant failed to accurately report Plaintiff's TD Bank Account and failed to report the account as being discharged in Plaintiff's Chapter 7 Bankruptcy.

56. Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

57. Defendant also obtains information from other credit bureaus (who commonly share information).

58. Defendant is aware that Equifax are generally required to report accounts that were discharged in the bankruptcy proceedings as included and discharged in bankruptcy.

59. Defendant should have reported the TD Bank Account as an account that was included and discharged in Plaintiff's Chapter 7 Bankruptcy.

60. Instead, Defendant incorrectly reported the TD Bank Account with an outstanding balance that Plaintiff is obligated to pay, even though it was included in Plaintiff's Bankruptcy Petition and subsequently discharged.

61. Defendant inaccurately reported the TD Bank Account and failed to properly consider Plaintiff's Chapter 7 Bankruptcy and the effect it had on relevant accounts.

62. In any event, Defendant knew or had reason to know that the reported information was contradicted by notices received from third parties as well as from the bankruptcy proceedings themselves.

63. If not patently inaccurate, Defendant's inaccurate reporting of the TD Bank Account is materially misleading.

*Defendant Equifax's Double Reporting of Plaintiff's TD Bank/ Target Account*

64. On Plaintiff's Equifax's Credit Report dated October 9, 2025 ("Report"), it was reported by Equifax that Plaintiff had a TD Bank/ Target card account, with an open date of October 6, 2017, outstanding balance in the amount of $1,563 reporting with a status of charge-off.

65. Defendant further stated on the same Report, a second TD Bank/ Target card account with the very same open date of October 6, 2017, identical outstanding balance in the amount of $1,563 reporting with numerous late payment notations.

9

66. The information published by Equifax is inaccurate since the TD Bank/ Target card account is being reported with derogatory notations in duplicate form on Plaintiff's credit reports, making it appear that Plaintiff has more derogatory accounts on her report than he should.

67. Equifax listed Plaintiff's single TD Bank/ Target card account as two (2) separate accounts both with late payment notations.

68. Equifax is required by law to implement processes and procedures which maximize possible accuracy of all reporting.

69. In addition to merely duplicating accounts on Plaintiff's credit report, Equifax's duplication of derogatory accounts has a serious impact to Plaintiff's perceived creditworthiness.

70. Equifax has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

71. Equifax failed to establish and implement reasonable procedures to ensure accurate reporting of Plaintiff's credit information.

72. Equifax violated 15 U.S. Code § 1681e(a) and (b) by failing to maintain and follow reasonable procedures to avoid reporting inaccurate information regarding the consumer Plaintiff.

73. Had Equifax maintained and followed reasonable procedures to assure maximum possible accuracy of the Plaintiff's information, it would have been revealed to Equifax that the TD Bank/ Target card account in question was being reported in duplicate form.

74. Equifax is required to maintain maximum possible accuracy of consumer credit reports, and this error should have been picked up internally by Equifax.

75. Equifax published and disseminated such inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

76. As a result of Defendant Equifax failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial

*Plaintiff's Damages*

77. As a preliminary matter, Defendant failed to report the TD Bank Account accurately because Defendant reported it with an open balance when it was previously discharged in Plaintiff's Chapter 7 Bankruptcy.

78. Additionally, Equifax double reported Plaintiff's TD Bank/ Target card account – an account with derogatory information - on Plaintiff's credit report.

79. As an individual attempting to improve his credit score for future credit transactions, the Plaintiff was harmed because of Defendant' inaccurate reporting.

80. The Defendant' consumer reports failed to report the TD Bank Account and Plaintiff's Chapter 7 Bankruptcy appropriately, which causes damage to Plaintiff's creditworthiness and his financial wellbeing.

81. Plaintiff's consumer credit file and consumer reports were reviewed by numerous entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by Defendant.

11

82. As a direct result of Defendant' inaccurate reporting and failure in investigating disputes, Plaintiff suffered damage, including a decreased credit score, lower overall creditworthiness, and other financial harm.

83. Defendant published and disseminated such inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

84. As a result of Defendant' failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial

85. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I
**(Willful Violation of the FCRA as to the Defendant)**

86. Plaintiff hereby incorporates by reference paragraphs numbered 1 through 85 of this Complaint as though fully set forth herein at length.

87. This is an action for willful violation of the Fair Credit Reporting Act U.S.C. § 1681 *et seq*.

88. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires Equifax, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

89. The Defendant have willfully and recklessly failed to comply with the Act. The Failure of the Equifax to comply with the Act includes but is not necessarily limited to the following:

   a. The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

   b. The failure to correct erroneous personal information regarding the Plaintiff, such as Defendant' reporting of Plaintiff's TD Bank Account and Equifax's reporting of Plaintiff's TD Bank/ Target card Account;

   c. The failure to remove and/or correct the inaccuracy and derogatory credit information;

   d. The continuous placement of inaccurate information into the credit report of the Plaintiff;

   e. The failure to promptly delete information that was found to be inaccurate, or could not be verified; and

   f. The failure to take adequate steps to verify information Equifax had reason to believe was inaccurate before including it in the credit report of the consumer.

90. As a result of the conduct, action and inaction of Equifax, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on future applications for credit and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

91. The conduct, action and inaction of Equifax was willful rendering Equifax liable for actual, statutory and punitive damages in an amount to be determined by a Judge and/or Jury pursuant to 15 U.S.C. § 1681n.

92. The Plaintiff is entitled to recover reasonable costs and attorney's fees from the Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff Ryan Reissmann, an individual, demands judgment in his favor against the Equifax for damages together with attorney's fees and Court costs pursuant to 15 U.S.C. § 1681n.

## COUNT II
**(Negligent Violation of the FCRA as to the Defendant)**

93. Plaintiff hereby incorporates by reference paragraphs numbered 1 through 85 of this Complaint as though fully set forth herein at length.

94. This is an action for negligent violation of the Fair Credit Reporting Act U.S.C. § 1681 *et seq*.

95. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires Equifax, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

96. The Defendant has negligently failed to comply with the Act. The failure of Equifax to comply with the Act includes but is not necessarily limited to the following:

   a. The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

   b. The failure to correct erroneous personal information regarding the Plaintiff, such as Defendant' reporting of Plaintiff's TD Bank Account and Equifax's reporting of Plaintiff's TD Bank/ Target card account;

   c. The failure to remove and/or correct the inaccuracy and derogatory credit information;

    d. The continuous placement of inaccurate information into the credit report of the Plaintiff;

    e. The failure to promptly delete information that was found to be inaccurate, or could not be verified; and

    f. The failure to take adequate steps to verify information Equifax had reason to believe was inaccurate before including it in the credit report of the consumer.

97. As a result of the conduct, action and inaction of Equifax, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on future applications for credit and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

98. The conduct, action and inaction of the Equifax was negligent rendering the Equifax liable for actual, statutory and punitive damages in an amount to be determined by a Judge and/or Jury pursuant to 15 U.S.C. § 1681o.

99. The Plaintiff is entitled to recover reasonable costs and attorney's fees from the Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff Ryan Reissmann, an individual, demands judgment in his favor against the Equifax for damages together with attorney's fees and Court costs pursuant to 15 U.S.C. § 1681o.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant Equifax Information Services, LLC, for the following:

(a) Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

Dated: December 3, 2025

Respectfully submitted,

/s/ *Yaakov Saks*
**Stein Saks, PLLC**
By:  Yaakov Saks
One University Plaza, Ste 620
Hackensack, NJ 07601
Phone: (201) 282-6500
Fax: (201)-282-6501
ysaks@steinsakslegal.com
*Counsel for Plaintiff*